MICHAEL CARROLL, Respondent, *v*. PEOPLE'S RAILWAY
COMPANY, Appellant.

December 18, 1883.

1. AGENCY—CORPORATIONS—NOTICE.—Knowledge possessed by the secretary of a corporation touching his business and coming within the scope of his duties, as such secretary, is the corporation's knowledge.

2. —— That such secretary, for his private gain, and without collusion with, or the knowledge of, the person dealing with him, fails to impart his knowledge to the corporation, is immaterial in an action against the corporation.

8. —— A car conductor who, in leaving a part of his wages with the secretary of a corporation as a deposit, believes that he is depositing the same with the corporation, being partly induced to this belief by the action of the secretary in making a memorandum of the deposit in writing, at the time, on the books of the corporation, and by other circumstances, may recover from the corporation the money so deposited.

4. —— ESTOPPEL.—The conductor's receipt on the books of the company for the full amount of his wages for each month will not estop him from recovering of the corporation the money so deposited with it.

5. —— Where one of two persons must suffer by the act of a third person, the loss must fall upon him who placed it in the power of the third person to do the wrong.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Affirmed*.

GIVEN CAMPBELL, for the appellant.

MCKEIGHAN & JONES, with E. J. O'BRIEN, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The petition states that in May, 1880, the plaintiff was employed as a car conductor, at the wages of $2 per day, said wages being payable on the third and eighteenth days of each month; that he served the defendant as such, at said rate of wages, continuously to July 29, 1882, when he was discharged by the defendant; that from time to time during said period he requested the

defendant to retain and keep for him certain portions of his wages until he demanded them; that the defendant did so at various times, and in various amounts, amounting in all to $491, which the defendant promised to pay the plaintiff on demand, but has failed to do so; and he asks judgment for that sum and interest.

The answer of the defendant was a general denial.

At the trial, Michael Carroll, sworn for himself, said that he entered the service of the company, as conductor, about April 1, 1880, at the rate of wages of $2 per day, and remained in its service to about July 11, 1882. " William B. Ryder was secretary and treasurer of the company. There were two regular pay-days each month, the third and eighteenth of the month. The first transaction was when I first commenced. I paid for a book and some tickets and had $10 left, which I told Mr. Ryder that I would like to leave in the office, so that I could draw it, and afterwards I drew it in tickets. The first proceeding of this money-leaving was about the first of June. I said to Mr. Ryder that, if I continued, I wanted that he should have this money entered on the book according as I left it in, so that any time I would go in there to draw this money, whether voluntarily or otherwise, it could be settled up from this book (the pay-roll book), and Ryder agreed to it. Under this understanding I continued on to do so, believing that I was leaving the money in the hands of the company, and the amount so left was in the aggregate of $491. The part I didn't draw I never saw it; it was not handed to me and by me handed back. It was understood between me and Ryder that he would enter it on the book where it would show, and I saw him mark it on the book. I did not know whether Ryder was personally responsible, and had no conversation with him about this money outside of the office. I signed the pay-rolls for the amount due me set opposite my name."

On behalf of the defendant, W. B. Ryder testified that, from April, 1880, to June 3, 1882, he was secretary and treasurer, and had charge of the books of the defendant. " It was an universal rule of the company that the employés were to be paid on the third and eighteenth of each month, and all had notice of it, and they were required to go up and sign the pay-rolls on those days. It has been the custom for the last twenty-three years, as was done in this case, for the men to come up and sign the pay-roll and leave a part of the money with me as an individual. [It was admitted by counsel for the plaintiff that the plaintiff signed the pay-roll in full for all wages.] All that the plaintiff would say was, ' I want to leave $20 in,' or some other amount, and would say, ' Give me the difference ; ' he never told me that he wanted the defendant to retain and keep a certain portion of his wages. I always paid him off; he knew the regular pay-days, and that the employés were required to come up on those days and be paid off; that such was the practice of the company. He merely asked me to retain the money and keep it for him. He came to me after I left the employment of the company, and wanted to know when I could pay him ; how soon I could do it. The entries on the pay-roll of the amounts left in were in pencil ; and I kept a memorandum of these amounts in a book of my own. I do not know that the company ever had knowledge that the men were leaving money with me. I never informed the plaintiff that I had any authority from the company to retain any part of his wages for the company ; he never asked me."

Julius S. Walsh was president of the defendant corporation. He testified that it was the practice of the company to pay its employés twice a month, and all employés were required to draw their wages then. " The plaintiff never asked the company, to my knowledge, to retain and keep any part of his wages, and the company never promised to pay him any of these amounts. The company

was not aware of these transactions with Mr. Ryder until he resigned. I had charge of running the road ; Ryder of the books and office."

The plaintiff, recalled, said he never demanded his money of Ryder ; Ryder never gave him money which he gave back. This was all the evidence.

At the close of the plaintiff's case, the defendant offered an instruction that, under the pleadings and evidence the plaintiff could not recover, which the court refused to give. The court then gave the following instruction at the request of the plaintiff: " The court instructs the jury that, although they may find that plaintiff Carroll signed a receipt on the pay-roll of the defendant for the full amount of wages agreed to be paid him by the defendant, yet if the jury find from the evidence that Carroll, as a matter of fact, did not draw all his wages, but left from time to time a part thereof with the defendant, they will find their verdict for plaintiff Carroll and assess his damages at the amount of said wages, which they may find that he left with the defendant, with interest on said amount at the rate of six per cent per annum from the institution of this suit to this date." Of its own motion: 1. " If you believe that as a matter of fact the plaintiff has received from defendant the various amounts of money shown by the pay-rolls opposite his signature, and that the same was the full amount of the wages by him earned, then you must find for defendant. 2. The court instructs the jury that if they believe from the evidence, that plaintiff gave a part of his wages to Wm. B. Ryder for safe keeping, or permitted him to take a part of his wages for his individual use, and at the same time signed a receipt in full to the defendant, intending thereby to acquit the defendant of all further liability to him on account of the money so given to or permitted to be taken by said Wm. B. Ryder, then the defendant is not liable in this action, even though said Ryder has not refunded the amounts entrusted to him. 3.

The receipts of the plaintiff that have been read to you are *prima facie* evidence that the plaintiff has received the full amount in said receipts specified, and the burden of proof is on the plaintiff to satisfy you that he has not in fact received the sums specified therein."

And the court refused the following instructions requested by the defendant : —

" 1. The court instructs the jury, that if they find from the evidence that the secretary and treasurer on each pay-day was provided by [the company] the plaintiff (*sic*) with sufficient money to pay off all its employes, including the plaintiff, and that on each pay-day the plaintiff signed a receipt in full of his demands against the company, then the court instructs the jury that the defendant is not liable to plaintiff for any sum left by him in the possession of Mr. Ryder, unless they find that he had authority from the company to receive and retain such money left in his hands by plaintiff as aforesaid.

" 2. The court instructs the jury that if the defendant paid over to its secretary the full amounts due by it to the plaintiff, and that said secretary offered to pay the full amounts to plaintiff, and that he receipted for same in full, but left it in his hands as an individual for safe keeping, that then plaintiff can not recover of the defendant."

The plaintiff had a verdict and judgment for the amount claimed.   The rulings which are objected to, are : —

1. That the court erred in permitting the plaintiff to testify as to conversations had with Ryder, the defendant's secretary and treasurer, and as to agreements made between Ryder and the plaintiff as to plaintiff's leaving his money " in."   We are referred for these rulings to pages eight and ten of the record.   We do not see that any exceptions were saved to such rulings, and therefore we can not consider these assignments of error.

2. That the court erred in excluding evidence offered by the defendant to show that the money to pay all the men

was, on each pay-day, handed to Ryder to be paid to the men, and was charged to the company by him as actually paid to the men. There was no error in excluding this evidence. There is no principle known to the law by which the plaintiff's right could be affected by any transaction between the defendant and its secretary and treasurer, or by any entries made by the latter upon the books of the company, not known to the plaintiff. We shall not take time to argue so plain a proposition.

3. That the court erred in refusing to permit the defendant to show in what capacity Ryder kept the money in question. This objection fails, for the same reason upon which the previous objection fails. It was wholly immaterial, so far as the plaintiff was concerned, in what capacity Ryder kept the money in question, since there was no evidence tending to show that the plaintiff knew that he kept it in any other capacity than as the treasurer of the defendant. . Suppose Ryder had been allowed to answer the question, and had said that he kept it in his own individual capacity, and converted it to his own use; the plaintiff would be entitled to reply: "I knew nothing of that; you did not inform me that you kept it in your individual capacity, nor did any other person, acting on behalf of the company, so inform me. When you retained it, you did not appear or pretend to be acting for yourself, but you appeared to be and were acting as treasurer of the defendant. You did not in my presence or with my knowledge enter the fact of your retaining this money in a private memorandum book of your own, but you entered it before my eyes on the books of the company. Having thus led me to believe, by your conduct, that the money was retained by you in the treasury of the company, and for the company, I am not to be prejudiced by the fact that you may have converted the money to your own use. That is a question between you and the company." The case cited by the learned counsel for the defendant ( *Gardner* v. *Omnibus Co.*, 15 Ch. Leg. N. 312) is not in point;

because there the court found, as a matter of fact, that the plaintiff intended to make the secretary of the defendant his agent, to receive and keep in his individual capacity the plaintiff's salary, as the plaintiff's banker or depositary. If there is any evidence tending to show such a fact in this case the jury have negatived it by their verdict.

The learned counsel for the defendant invokes the rule of law, that where one of two innocent persons must suffer by the act of a third person, it must be that one who put it into the power of the third person to do the wrong or practice the deceit. In support of this view, it is argued that the plaintiff was aware of the rule and practice of the defendant to pay off its employés on the third and eighteenth of each month, and to require every one to draw his wages and sign the pay-roll on those days; that, with this knowledge, the plaintiff signed a receipt on each pay-day for the full sum of the wages due him, and thus put it into the power of Ryder, who was only authorized to pay out, to make the defendant believe, by means of these pay-rolls, that the men were paid in full on each pay-day; that the retention of any moneys by Ryder, was not only not within the scope of his agency, but was against the express rules and practice of the defendant; and, hence, that in this matter Ryder was, in respect of the defendant, a third person. It will be perceived, by recurring to the statement of facts, that this argument is based upon stronger assumptions of fact than are warranted by the testimony given at the trial. It does, indeed, appear that it was the rule and practice of the defendant to pay its employés twice a month on the days named; that all the employés had notice of this rule and practice, and that they were required to go up and sign the pay-roll on those days. But it does not appear that it was the rule and practice for the defendant on those days to pay to every employé the entire amount due to him, whether he desired to receive it or to leave a portion of it with the defendant. Neither is there any evidence tending to show that the plaintiff knew that Ryder was only authorized to pay out. On

the contrary, Ryder's own testimony shows that this practice of retaining portions of the moneys due such of the men as did not desire to draw their full pay on each pay-day, had been going on for twenty-three years; the sums not drawn, or if handed over to the men, handed back by them, being checked by him in pencil on the pay-roll of the company. If the rule and practice is to govern, it is hard to understand on what principle the plaintiff is to be charged with negligence, from the mere fact of signing the pay-roll for the full amount, when, at the same time, a counter-check went down, showing that the full amount had not been paid. If the principle which is here invoked has any application to this case at all, it is hard to see how it can be applied against such employés of a corporation as street car conductors, most of whom, it is to be presumed, are not acquainted with financial matters, and in favor of the corporation itself, when the latter, for twenty-three years, had exercised so slight a supervision over its chief financial ofcer, that the course of business here described had been practiced publicly by such officer at the company's chief office and place of business, during this long period of time. If this principle has any operation at all in this case, its operation would seem to be exactly the reverse of that contended for.    Persons dealing with corporations are not bound to suspect fraud or to institute inquiries where everything seems fair, honest, open, in conformity with the usages of the corporation, and within the apparent scope of the powers of the agent with which they are dealing.

Indeed, this case is very simple and entirely free from doubt.    It is simply a renewed struggle over the old question with which courts of justice have had to deal ever since corporation have existed, namely, whether the public is to be the guarantor of the honesty of the agents of the corporation, or whether the corporation is to be the guarantor of the honesty of its own agents.    Where the act done by such agent was done in the apparent exercise,

and within the apparent scope, of his agency, this question has never been decided, except in one way, and that is against the contention of the defendant in this case.

The same may be said of the argument that the defendant had no notice of these transactions between Ryder and the plaintiff. Indeed, Mr. Walsh, the defendant's president, testified that the company had no knowledge of them; but that was the statement of a conclusion of law, such as a business man, not knowing the law, might easily fall into. The witness, no doubt, meant to convey the idea that the president and directors had no knowledge of them. But whether the president and directors had such knowledge or not, the corporation, nevertheless, had knowledge; for it is a rule of law that, whatever a general agent of a corporation knows, when acting within the scope of his agency, touching the business of his agency, is the knowledge of the corporation. *Mechanic's Bank* v. *Schaumburg*, 38 Mo. 228; *Hayward* v. *Insurance Co.*, 52 Mo. 181. The knowledge of Ryder, in respect of these transactions, was imputable to the company; and the fact that, in violation of his duty to the company, he may have withheld this knowledge from its president, is a matter with which, in the absence of collusion between Ryder and this plaintiff, which is not shown or suggested, the plaintiff has no concern.

Tested by these principles, no just ground of exception is perceived to the instructions upon which the court submitted the case to the jury. It seems equally clear that the first instruction offered by the defendant was rightly refused. It makes the plaintiff the warrantor of the fidelity of the defendant's secretary and treasurer, to the defendant. It involves the conclusion that a written receipt, showing the payment of a sum of money, is conclusive evidence of the payment of such money, and estops the party signing such receipt from showing the contrary, which is not the law. 1 Greenl. Ev., sect. 305; *Riley* v.

*Kershaw*, 52 Mo. 224; *Bigbee* v. *Coombs*, 64 Mo. 529. There is less difficulty in applying this principle here than in ordinary cases, because it appears that, although the pay-roll which the plaintiff receipted on each pay-day showed the full amount due him since the previous pay-day, yet it appears that this receipt was varied at the time he signed it by the act of the defendant's secretary and treasurer in entering upon it the amount which, in point of fact, was not paid.   The defendant's second instruction was also rightly refused, for the reason already suggested, in so far as it involved the conclusion that the signing of the pay-roll operated as an estoppel against the plaintiff from showing that he had not received the amount originally written on the pay-roll; and, in so far as it directed the jury to find for the defendant, if the plaintiff left the money in Ryder's hands as an individual for safe keeping, because it was covered by the second instruction given by the court of its own motion.

The judgment of the circuit court is accordingly affirmed. All the judges concur.